# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 02-22274-CIV-MORENO/GARBER

MICHAEL MADERA,

      Plaintiff,

v.

TENET HEALTHCARE CORPORATION
d/b/a PALMETTO GENERAL HOSPITAL,

      Defendant.

_____/



## DEFENDANT'S MOTION TO DISMISS, COMPEL ARBITRATION, AND STAY PROCEEDINGS WITH INCORPORATED MEMORANDUM OF LAW

Defendant, TENET HEALTHCARE CORPORATION ("Tenet"), sued herein as Tenet Healthcare Corporation d/b/a Palmetto General Hospital, pursuant to Fed. R. Civ. P. 12(b)(6) and the Federal Arbitration Act, 9 U.S.C. §§ 1-16, moves the Court to enter an Order directing Plaintiff, MICHAEL MADERA ("Plaintiff"), to arbitrate his claims and staying all proceedings in this matter. Alternatively, Tenet moves the Court to dismiss Plaintiff's claim under the Florida Civil Rights Act, because Plaintiff has failed to exhaust his administrative remedies.

## SUMMARY OF ARGUMENT

On January 14, 2002, Plaintiff applied for a social worker position at Palmetto General Hospital through an employment application (the "Employment Application"). Compl., ¶¶ 9, 11; Ex. A, Employment Application. The Employment Application, which Plaintiff signed, contains an arbitration provision (the "Arbitration Provision") which states as follows:

> I understand that any and all disputes regarding my employment with Tenet, including any disputes relating to the termination of my employment, are subject to the Tenet Fair Treatment Process, which includes final and binding arbitration, and I also understand and agree, as a condition of employment and continued employment, to submit any such disputes for resolution under that process, and I further agree to abide by and accept the decision of the Arbitration Panel as the final and binding decision and resolution of any such disputes I may have.

Ex. A, Employment Application, at 3. The Tenet Fair Treatment Process delineates the arbitration procedures. Ex. B, Tenet Fair Treatment Process.

On February 25, 2002, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") alleging that he had "not been called for an interview even though I met all the criteria for the position." Ex. C, Charge of Discrimination. Plaintiff's Charge of Discrimination claimed that Plaintiff had not been interviewed for the social worker position because of his handicap (quadriplegia) in violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.* Id. On April 23, 2002, the EEOC dismissed Plaintiff's Charge of Discrimination finding that, "The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC." Ex. D, Dismissal and Notice of Rights.

On July 15, 2002, Plaintiff filed this lawsuit alleging disability discrimination claims under the Florida Civil Rights Act, § 760.01, *et seq.,* Fla. Stat. (the "FCRA") and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.* In his Motion for Remand (filed on or about August 29, 2002), Plaintiff states that he only has an FCRA claim against Tenet. Plaintiff's Complaint alleges that he was denied the social worker position because of his handicap (quadriplegia). Compl., ¶ 15.

The Court should compel arbitration and stay this lawsuit pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"). Specifically, Plaintiff agreed to arbitrate all disputes with Tenet through the Arbitration Provision of the Employment Application. Accordingly, § 4 of the FAA mandates arbitrating Plaintiff's claim.

Alternatively, the Court should dismiss Plaintiff's claim because he failed to exhaust administrative remedies under the FCRA prior to bringing this lawsuit. On April 23, 2002, the EEOC issued its Dismissal And Notice Of Rights ("Dismissal") indicating that Plaintiff did not have a claim for disability discrimination. Ex. D, Dismissal and Notice of Rights. The EEOC's Dismissal serves as a determination of no reasonable cause under the FCRA. See § 760.11(7), Fla. Stat. Consequently, Plaintiff cannot bring a civil action alleging FCRA violations, since he was first required to request an administrative hearing before the Florida Commission on Human Relations (the "FCHR") within 35 days of the EEOC's determination pursuant to § 760.11(7), Fla. Stat.

## ARGUMENT

**I.  THE FAA MANDATES ARBITRATING THIS LAWSUIT BECAUSE PLAINTIFF AGREED TO ARBITRATION.**

**A.  The FAA .**

Although previously disfavored by courts, arbitration agreements to resolve disputes between parties have now received near universal approval. Weeks v. Harden Manufacturing Corp., 291 F.3d 1307, 1312 (11th Cir. 2002); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-27 (1985) ("[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute

-3-

resolution."). In 1925, Congress demonstrated its approval of arbitration by enacting the FAA. Weeks, 291 F.3d at 1312. The FAA reversed the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and placed agreements to arbitrate on the same footing as other contracts. Id.; Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 219-220, and n. 6 (1985); Scherk v. Alberto-Culver Co., 417 U.S. 506, 510 n. 4 (1974).

The FAA's primary substantive provision states that, "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA requires the Court to stay proceedings if the parties have agreed in writing to arbitrate an issue underlying the district court proceeding. 9 U.S.C. § 3. Section 3 of the FAA states in relevant part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Id. (emphasis added).

The FAA manifests a "liberal federal policy favoring arbitration agreements." Moses H. Cone Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). As a result, courts must construe any doubts concerning the scope of the arbitrable issues in favor of arbitration. Id.; Ruby-Collins, Inc. v. City of Huntsville, 748 F.2d 573 (11th Cir. 1984); McMahan

-4-

Securities Co. v. Forum Capital Markets L.P., 35 F.3d 82, 86 (2d Cir. 1994); Sease v. PaineWebber, Inc., 697 F. Supp. 1190 (S.D. Fla. 1988).

A federal court must stay court proceedings and compel arbitration once it determines that the dispute falls within the scope of a valid arbitration agreement." Houlihan v. Offerman & Co., Inc., 31 F.3d 692, 695 (8th Cir. 1994). The FAA leaves no discretion with the district court on this matter. McMahan at 35 F.3d at 86; see also In re Complaint of Hornbeck, 981 F.2d 752, 754 (5th Cir. 1993).


**B.      The FAA Applies To Employment Discrimination Claims.**

Claims arising under employment discrimination statutes – such as the FCRA and the ADA – may be the subject of an arbitration agreement and are enforceable under the FAA.[1]   In Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991), the plaintiff/employee was required, as a condition of his employment, to complete and sign a New York Stock Exchange ("NYSE") registration application which provided that arbitration would be the plaintiff's exclusive remedy for any dispute, claim, or controversy between the plaintiff and his employer. Id. at 23.   The plaintiff was subsequently terminated and he sued his employer alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., (the "ADEA"). Id. at 23-24. The employer moved to compel arbitration under the FAA based on the arbitration provision in the NYSE application; the trial court denied the employer's motion finding that the ADEA precluded

_____

[1] The FCRA is construed in conformity with the ADA. Smith v. Avatar Prop., Inc., 714 So. 2d 1103, 1106 (Fla. 5th DCA 1998); Greene v. Seminole Elec. Co-Op, Inc., 701 So. 2d 646, 647 (Fla. 5th DCA 1997).

compulsory arbitration of claims; and the Fourth Circuit reversed holding that ADEA claims are arbitrable.

On appeal, the U.S. Supreme Court held that arbitration agreements are enforceable with regards to claims arising under a federal statute, "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue .... [as indicated] in the text of the [statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purposes." Gilmer, 500 U.S. at 26. The Supreme Court found that the text, legislative history, and the purposes of the ADEA did not demonstrate a congressional aim to preclude arbitration and, thus, concluded that compulsory arbitration agreements involving ADEA claims were enforceable under the FAA. Id. at 26-27.

Similarly, in Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698 (11th Cir. 1992), the plaintiff sued her former employer alleging sexual harassment under Title VII and pendent state law claims of battery, intentional infliction of emotional distress, and negligent retention. Id. at 699. The employer moved to stay proceedings pending arbitration pursuant to the FAA, since the plaintiff had agreed to arbitrate employment disputes in her application for registration as a stock broker. Id. The district court dismissed the state law claims finding that they were covered by the arbitration agreement in the application, but refused to dismiss the Title VII claims. Id. Disagreeing with the district court, the Eleventh Circuit reversed and held that Title VII claims, as well as the pendent state law claims, were subject to compulsory arbitration under the FAA. Id.

Finally, in Circuit City Stores Inc. v. Adams, 532 U.S. 105 (2001), the plaintiff completed and signed an employment application when he applied for a job with the

SHUTTS & BOWEN LLP / 1500 MIAMI CENTER / 201 SOUTH BISCAYNE BOULEVARD / MIAMI, FLORIDA 33131 / (305) 358-6300

defendant. Id. at 109.  The employment application included an arbitration provision. Id. The plaintiff was subsequently terminated, and he sued his former employer only alleging violations of California state law discrimination statutes and other state law tort claims. Id. at 110.  The employer moved to compel arbitration, the district court granted the motion, and the Ninth Circuit disagreed finding that the FAA did not apply in an employment setting.  Reversing the Ninth Circuit, the Supreme Court held that the FAA was applicable to all contracts of employment, except those contracts involving transportation workers.

As demonstrated in the above Supreme Court and Eleventh Circuit decisions, ADA and FCRA claims are clearly arbitrable and subject to the FAA.  See also Equal Employment Opportunity Commission v. Waffle House, Inc., 534 U.S. 279 (2002) (stating, in dicta, that ADA claim was arbitrable under the FAA for the employee, and holding that EEOC was not a party to the arbitration agreement); Brown v. ITT Consumer Financial Corp., 211 F.3d 1217 (11th Cir. 2000) ("This circuit has held that statutory claims, including Title VII claims, can be subject to mandatory arbitration.  Where, as here, the agreement to arbitrate was made by the individual employee, and not by his collective bargaining representative, the employee can be compelled to arbitrate his statutory claim.").  In fact, the ADA specifically includes language favoring arbitration:

> Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including ... arbitration, is encouraged to resolve disputes arising under this chapter.

42 U.S.C. § 12212; see also Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 143 (1st Cir. 1998) (finding that ADA claims are arbitrable and ordering the parties to arbitration); Brisentine v. Stone & Webster Engineering Corp., 117 F.3d 519, 523 (11th Cir. 1997).

-7-

**C.    Plaintiff's FCRA Claim Is Arbitrable.**

In this case, Plaintiff signed the Employment Application stating that arbitration of disputes was a condition of employment.  The Employment Application contained the Arbitration Provision in which Plaintiff agreed that, "[A]ny and all disputes regarding my employment with Tenet ... are subject to the Tenet Fair Treatment Process, which includes final and binding arbitration, and I also understand and agree, as a condition of employment and continued employment, to submit any such disputes for resolution under that process, and I further agree to abide by and accept the decision of the Arbitration Panel as the final and binding decision and resolution of any such disputes I may have." Ex. A, Employment Application, at 3.

As the above cases clearly explain, Plaintiff's FCRA claim should be arbitrated under the FAA because he agreed to arbitration.  This case is identical to Etokie v. Carmax Auto Superstores, Inc., 133 F. Supp. 2d 390 (D. Ma. 2000).  In Etokie, the plaintiff completed an employment application that included an arbitration agreement which stated that the plaintiff would not be considered for employment unless he accepted the arbitration agreement.  Id. at 391.  The plaintiff subsequently sued his employer alleging disability discrimination under the ADA and several state law claims.  Id.  The employer moved to compel arbitration under the FAA, and the court granted the motion ordering arbitration finding that the FAA establishes a liberal policy favoring arbitration and, "To effectuate this policy, federal courts should, whenever possible, enforce agreements to arbitrate."  Id.

Similarly, in Litaker v. Lehman Brothers Holding, Inc., Case No. 97-CIV-1607(DC), 1999 WL 619638 (S.D.N.Y. 1999), the plaintiff completed and signed an employment

-8-

application that included an arbitration provision in which she agreed to arbitrate any controversy arising out of her employment. Id. at *1. After signing the employment application, the plaintiff accepted a position as an administrative assistant. Id. Several years thereafter, the plaintiff filed a claim against the employer alleging sex and race discrimination in violation of Title VII and its New York state law counterparts (i.e., New York State Human Rights law and New York City Human Rights Law). Id. The employer moved to compel arbitration based on the employment application's arbitration agreement, and the Litaker court agreed finding that the plaintiff's claims were arbitrable. Id. at *2-6.

For the above reasons, the Court should order Plaintiff to arbitrate this dispute and stay the litigation pending arbitration.

## II.   PLAINTIFF'S FCRA CLAIM IS BARRED BECAUSE HE DID NOT EXHAUST ADMINISTRATIVE REMEDIES.

In the instant case, the EEOC issued a no-cause determination through its Dismissal. A finding of no reasonable cause by the EEOC bars Plaintiff from pursuing a civil action under the FCRA. § 760.11(7), Fla. Stat. Instead, Plaintiff's only remedy under the FCRA was to request an administrative hearing from the FCHR within 35 days of the no-cause determination. Id. Because Plaintiff failed to request an administrative hearing from the FCHR within 35 days of the EEOC's Dismissal, his FCRA claim is barred.

Section 760.11 contains three subsections regarding civil and administrative remedies: § 760.11(4), (7), and (8). An aggrieved party's remedy under the FCRA is dependent on the FCHR's disposition of the charge under each of these sections. If the FCHR determines that there is reasonable cause to believe a discriminatory practice

-9-

occurred or if it fails to act, an aggrieved party may either bring a civil action or request an administrative hearing.  § 760.11(4) and (8), Fla. Stat.  However, if the FCHR determines that no reasonable cause exists to believe that a violation has occurred, the aggrieved party can only request an administrative hearing within 35 days of the dismissal. § 760.11(7).

In Woodham v. Blue Cross and Blue Shield of Florida, Inc., 793 So. 2d 41(Fla. 3d DCA 2001), review granted (Fla. March 15, 2002), the plaintiff filed a charge of discrimination with the EEOC alleging race discrimination, and the charge was dual-filed with the FCHR pursuant to the EEOC/FCHR workshare agreement.  Not receiving any determination from the EEOC, the plaintiff requested a right-to-sue letter from the EEOC, and the EEOC issued a no-cause determination through its Dismissal and Notice of Rights. The plaintiff then sued her former employer alleging FCRA claims.  The trial court granted summary judgment to the employer holding that the plaintiff's FCRA claims were barred since she had failed to request an administrative hearing upon receipt of the EEOC's Dismissal as required under 760.11(7), Fla. Stat.

Affirming the trial court's decision, the Third District Court of Appeal found that a Dismissal and Notice of Rights by the EEOC operates as a "no cause" determination by the FCHR.  Id. at 42 n.1.  The Woodham court held that, "The receipt of a 'no cause' determination terminates the person's option to proceed under § 760.11(8), and requires that the person follow subsection 7, and exhaust the administrative remedy therein, *prior* to the filing a lawsuit in a Florida court."  Id. at 43.  The Woodham court explained:

> The language of § 760.11 is unambiguous.  Each subsection contemplates application in one of three different scenarios: When the FCHR issues a "cause" determination subsection 4 outlines the aggrieved person's

-10-

remedies; when the FCHR issues a "no cause" determination, the aggrieved person must follow the administrative procedures in subsection 7; and when the FCHR does not act, the aggrieved person must follow subsection 8. Under the plain language of § 760.11(7), which contains no time frame for receipt of a determination, [the plaintiff] was required to request an administrative hearing upon receipt of the "no cause" determination.

****

But unfortunately, once the "no cause" determination was issued, the option to sue under subsection 8 was foreclosed to [the plaintiff]. Thereafter, [the plaintiff] was required to pursue administrative remedies as provided in subsection 7. Because she did not do so, the court properly granted summary judgment. If this appears to be an injustice, it can only be remedied by legislative action not by judicial fiat

****

Once the "no cause" determination was issued, [the plaintiff's] remedies are restricted by subsection 7. Again, any other interpretation would render subsection 7 a complete nullity.

Id. at 44-45. The Woodham court has certified this issue to the Florida Supreme Court, which is currently deciding the issue.

In Dawkins v. BellSouth Telecommunications, Inc., 53 F. Supp. 2d 1356 (M.D. Fla. 1999), aff'd, 247 F.3d 245 (11th Cir. 2001), the EEOC issued a no-cause finding as to the plaintiff's charge of discrimination. The plaintiff did not seek an administrative hearing within 35 days of the no-cause determination, but instead filed a civil action under the FCRA. The Dawkins court dismissed the plaintiff's complaint and found that the EEOC's no-cause determination operated as a no-cause determination by the FCHR, and, thus, the plaintiff could not proceed with a civil action under the FCRA since she had failed to request an administrative hearing within 35 days as mandated by § 760.11(7). Id. at 1360-61. The Dawkins court stated:

Therefore, based on this language, a finding by either agency should operate as a finding by the other. Accordingly, the EEOC's no-cause determination did operate as a no-cause determination by the FCHR.

-11-

For the foregoing reasons, Plaintiff's failure to request an administrative hearing operates to bar her claim.  Therefore, the Court dismisses Plaintiff's amended complaint in accordance with the above.

Id. at 1361.

Similarly, in Blakely v. United Services Automobile Assoc., 13 Fla. L. Weekly Fed. D79 (M.D. Fla. Oct. 4, 1999), the plaintiff sued her employer alleging, *inter alia*, a violation of the FCRA.  The EEOC had issued a Dismissal and Notice of Rights stating that "it was unable to conclude that the information obtained established a violation of the statutes." Id. at D81.  Citing the Dawkins decision, the Blakely court found that the EEOC's Dismissal and Notice of Rights was a no-cause determination which triggered the 35-day administrative hearing requirement under the FCRA.  The Blakely court concluded that, "As such, the Court finds that [the plaintiff] did not request an administrative hearing within the permitted time and thus is barred from pursuing a claim under this statute [the FCRA]." Id. at D81.

In the instant case, Plaintiff received a no-cause determination from the EEOC which operates as a no-cause determination under the FCRA and  triggers the 35-day administrative hearing requirement.   The EEOC dismissed Plaintiff's Charge of Discrimination finding that, "The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC." Ex. D, Dismissal and Notice of Rights.  Hence, Plaintiff was required to pursue administrative remedies, including the hearing, as provided in § 760.11(7), but failed to do so.  Accordingly, the EEOC's Dismissal precludes Plaintiff from pursuing any FCRA claim and the Court should dismiss Plaintiff's FCRA claim with prejudice.

-12-

## **CONCLUSION**

Tenet respectfully requests that the Court enter an Order compelling Plaintiff to arbitration and staying these proceedings, or, alternatively, dismissing Plaintiff's claim because he failed to exhaust his administrative remedies.

Respectfully submitted,

SHUTTS & BOWEN LLP
Attorneys for Defendant
201 S. Biscayne Boulevard
1500 Miami Center
Miami, Florida  33131
(305) 379-9103
(305) 347-7386 (Facsimile)

By: _____
    Sheila M. Cesarano
    Florida Bar No. 708364
    Rene Gonzalez-LLorens
    Florida Bar No. 00537980

-13-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing motion was mailed this ___/6___ day of September 2002 to:

**L.H. Steven Savola, Esq.**
Ferraro & Associates, P.A.
200 South Biscayne Boulevard
First Union Center, Suite 3800
Miami, Florida 33131
(305) 375-0111
(305) 379-6222 (facsimile)
Attorneys for Plaintiff

_____
OF COUNSEL

MIADOCS 544259.1 RGL

-14-



JAN 14 2002

2360

## APPLICATION FOR EMPLOYMENT

TENET HEALTHCARE CORPORATION OFFERS EQUAL EMPLOYMENT
OPPORTUNITY TO ALL APPLICANTS FOR EMPLOYMENT AND TO ALL EMPLOYEES
REGARDLESS OF SEX, AGE, RACE COLOR, RELIGIOUS CREED, NATIONAL
ORIGIN, ANCESTRY, MARITAL STATUS, SEXUAL ORIENTATION, OR DISABILITY.

**PLEASE PRINT PLAINLY**

### PERSONAL DATA

Date 1-14-02

Name Nodera                    Michael
   Last Name          First Name          Initial

Social Security No. 118-58-43-65

Present Address 15288 SW 104st    Apt 315
   Street Number and Name

Telephone (305) 387-8592

Miami          FL      33196
City          State     Zip Code

Message
Telephone (    )

Other names under which you have worked _____

Are you a U.S. citizen or authorized to work in the U.S. on an unrestricted basis?  ☒Yes  ☐ No

Can you, after employment, submit:
   Proof of your legal right to work in the U.S.?   ☒Yes  ☐ No

Have you ever been convicted of a felony?   ☐ Yes   ☒No

If yes, please give the date, location, and disposition of your case.

_____

_____

_____

### IN CASE OF EMERGENCY PLEASE CALL:

Name: Nestor Nodera          Relationship: Father     Business Phone: _____

Address: 15288 SW 104st Apt 315     33196     Home Phone: (305) 3813392

### POSITION DESIRED

Position(s) applied for Social Worker J20DC6FSH     Salary requirement _____

I understand that applicants who do not meet the minimum qualifications of the position will not be considered for the position. Only those final candidates will be contacted.

Specify:  ☒Full-time   ☐ Part-time   ☐ Per diem

Days and hours preferred Monday - Friday   9AM - 5PM

Were you previously employed by Tenet Healthcare Corporation, National Medical Enterprises, Inc., American Medical International, Inc. or one of its subsidiaries?   ☐ Yes   ☒No

If yes, when and where? _____

Names of relatives employed by Tenet Healthcare Corporation _____

If an offer is extended, when would you be available for work? _____

How did you become aware of the position for which you are applying? Please give individual or source _____

Do you have a reliable method of transportation to use if you are hired to work in this facility?  ☒Yes   ☐ No

### EMPLOYMENT HISTORY (Must be completed in full.)

Are you presently employed?   ☐ Yes   ☐ No

May we contact your present employer?   ☐ Yes   ☐ No

**DEFENDANT'S EXHIBIT**
A

| From | To | NAME AND ADDRESS OF EMPLOYER | | | JOB TITLE & DUTIES |
|---|---|---|---|---|---|
| Mo./Yr. | Mo./Yr. | Name | | | |
| | | Address | | | |
| Starting Salary | Final Salary | City | State | Zip | |
| | | Supervisor | | Ph. | Reason for Leaving |
| **From** | **To** | **NAME AND ADDRESS OF EMPLOYER** | | | **JOB TITLE & DUTIES** |
| Mo./Yr. | Mo./Yr. | Name | | | |
| | | Address | | | |
| Starting Salary | Final Salary | City | State | Zip | |
| | | Supervisor | | Ph. | Reason for Leaving |
| **From** | **To** | **NAME AND ADDRESS OF EMPLOYER** | | | **JOB TITLE & DUTIES** |
| Mo./Yr. | Mo./Yr. | Name | | | |
| | | Address | | | |
| Starting Salary | Final Salary | City | State | Zip | |
| | | Supervisor | | Ph. | Reason for Leaving |
| **From** | **To** | **NAME AND ADDRESS OF EMPLOYER** | | | **JOB TITLE & DUTIES** |
| Mo./Yr. | Mo./Yr. | Name | | | |
| | | Address | | | |
| Starting Salary | Final Salary | City | State | Zip | |
| | | Supervisor | | Ph. | Reason for Leaving |
| **From** | **To** | **NAME AND ADDRESS OF EMPLOYER** | | | **JOB TITLE & DUTIES** |
| Mo./Yr. | Mo./Yr. | Name | | | |
| | | Address | | | |
| Starting Salary | Final Salary | City | State | Zip | |
| | | Supervisor | | Ph. | Reason for Leaving |

## EDUCATION AND TRAINING

| Name of school and address | No. of years | Course or major | Diploma/Degree |
|---|---|---|---|
| Pontifical Catholic university Ponce, PR 00731 | 4 | Social Work | Bachelor's |
| Social work Deparment Damas, Hospital Ponce PR | 8-96-6/97 | | |

Professionals and technical applicants only

| Professional License No. | Type of License | Place of issue | Expiration date |
|---|---|---|---|
| | | | |

Membership in professional organizations

If you are licensed, has your license ever been suspended or revoked or are you currently involved in any proceeding that could affect your license or certification?  ☐ Yes   ☐ No   If yes, please give the date, location, and disposition of your case. _____

## REFERENCES (PLEASE DO NOT LIST RELATIVES)

| Name and Occupation | Address | Phone Number |
|---|---|---|
| NOElli Rivera VASQUEZ, MSW, Director | Damas, Hospital Ponce PR | (787) 840868 ext 655 |
| KEiTH F. RUSSELL, MD. | SUite 105, 8353 SW 124st Miami, FL 33156 | (305) 3785220 |
| suite 105 8353 SW | | |

GiLORiA ESCOBAR, Director, GAPI, INC
LA Quinta Calle 44-14
Yauco, PR 00698
TEL (787) 856-0542

Please use the space below for any additional information necessary to describe your full qualifications (i.e., specialty areas such as ICU, OB/GYN, special equipment, typing speed, computer software programs).

word (windows 98), Dictation software, fax and copiers. Knowledge and experience on issues related to disability.

TRAINING:

Practiced in different hospital departments with emphasis in the Skill Nursing Facility. Realized admissions, continuums, coordinated services, referrals and discharges. Also, provided support and orientation to patients and family members. Served as a member of the Board of Directors, G.A.P.I. Inc. (support Group for people with Disabilities in PR) non-profit organization. 1/95-1/01

Do you speak, read or write in any language other than English?

☒ Yes   ☐ No   If yes, please describe   speak, write, read spanish and english

## PLEASE READ CAREFULLY

PLEASE DO NOT RESPOND TO THE FOLLOWING QUESTIONS UNTIL AFTER YOU HAVE READ AND/OR DISCUSSED THE JOB DESCRIPTION OF THE POSITION FOR WHICH YOU ARE APPLYING.

Do you believe you would be able to perform the essential functions of the job for which you are applying?
Answer yes or no.   ☒ Yes   ☐ No

Is there any accomodation that you believe can reasonably be made which would permit you to perform the essential functions of the job for which you are applying? Answer yes or no.   ☒ Yes   ☐ No

Please explain your answer.   The desk at my office to accomodate my wheelchair.

I hereby certify that the answers to the foregoing questions are true to the best of my knowledge and agree to have any of the statements checked by Tenet Healthcare Corporation unless I have indicated to the contrary.

I am aware that a more detailed investigation concerning background and credit may also be conducted, if applicable to the job for which I am applying, and I hereby authorize such an investigation.

I understand that employment is contingent upon satisfactory completion of reference checks and that, upon my written request, information on the nature and scope of an inquiry, if one is made, will be provided to me.

Should a job offer be made, I consent to taking a pre-placement physical examination and such future examinations as may be required by Tenet Healthcare Corporation. I understand that any job offer or my continuing employment, if hired, is contingent upon my being physically, mentally and medically able, with or without reasonable accommodation, to successfully perform the essential functions of my job. I agree that the results of my medical/health screen may be released to appropriate agencies in the event of a worker's compensation injury and/or dispute on payment of a medical claim. I understand that as part of my pre-placement physical examination, upon which any offer of employment is contingent, I will be required to successfully pass a drug screening test. The test will be administered at Tenet Healthcare Corporation's expense, and will require me to provide a urine specimen for analysis. The urine specimen will be analyzed for the presence of marijuana, cocaine, phencyclidine (PCP), opiates and amphetamines. Results of the drug test are confidential, and will not be disclosed to others without my specific written consent. My signature below specifically signifies my consent to this pre-placement drug screening test.

I agree to wear or use all protective clothing or devices required by the facility and to comply with all safety policies and procedures.

I understand that nothing contained in this employment application is intended to lead to or create an employment contract between Tenet Healthcare Corporation or any subsidiary or affiliate and myself which would in any way restrict the right of the company to terminate my employment at will.

I further understand and agree that the employment relationship that may result from my application will be employment-at-will, and either I or Tenet Healthcare Corporation or any subsidiary or affiliate may terminate the relationship at any time.

I understand that any omission, misrepresentation or falsification can be grounds for refusal of employment. I further understand that, if employed, any false statements or misrepresentations herein or in conjunction with the application process may be cause for dismissal.

I understand that any and all disputes regarding my employment with Tenet, including any disputes relating to the termination of my employment, are subject to the Tenet Fair Treatment Process, which includes final and binding arbitration, and I also understand and agree, as a condition of employment and continued employment, to submit any such disputes for resolution under that process, and I further agree to abide by and accept the decision of the Arbitration panel as the final and binding decision and resolution of any such disputes I may have.

Applicant's signature



# Tenet Open Door Policy and Fair Treatment Process



**DEFENDANT'S EXHIBIT**

*B*

# Tenet Open Door Policy
# and
# Fair Treatment Process

### For Resolution of Problems,
### Concerns and Disputes

Tenet believes that positive employee relations and morale can be best achieved and maintained in a working environment that promotes ongoing and open communication between supervisors and employees, including open and candid discussions of employee problems, concerns and disputes. Tenet utilizes an *Open Door Policy* designed to encourage its employees to openly express their problems, concerns and opinions on any issue related to their employment.

Tenet sincerely hopes that you will never have a dispute relating to your employment with the company. However, Tenet recognizes that disputes sometimes arise between an employer and its employees relating to the employment relationship. Tenet believes that it is in the best interests of both its employees and the company to resolve those disputes in a forum that provides the fastest, least expensive and fairest method for resolving them. Therefore, in addition to the Open Door Policy, Tenet has established the *Fair Treatment Process ("FTP")*, a comprehensive mechanism for resolving employment-related disputes between you and the company. The FTP is a multiple-step process that ultimately provides for final and binding arbitration of employment-related disputes if they are not resolved in any of the previous steps in the process. Tenet employees can use the *Open Door Policy* and the *Fair Treatment Process* without fear of retaliation or reprisal.

### Application and Coverage

The FTP applies to all employees, regardless of length of service or status, and covers all disputes relating to or arising out of an employee's employment with the company or the termination of employment. The only disputes or claims not covered by the FTP are those listed in the "Exclusions and Restrictions" section below. Examples of the type of disputes or claims covered by the FTP include claims for wrongful termination of employment, breach of contract, employment discrimination, harassment or retaliation under the Americans With Disabilities Act, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964 and its amendments or any state or local discrimination laws, tort claims, or any other legal claims and causes or action recognized by local, state or federal law or regulations. *Your decision to accept employment or to continue employment with the company constitutes your agreement to be bound by the FTP. Likewise, the company*

1

*agrees to be bound by the FTP.* This mutual agreement to arbitrate claims means that both you and the company are bound to use the FTP as the only means of resolving employment-related disputes and to forego any right either may have to a jury trial on issues covered by the FTP. However, no remedies that otherwise would be available to you or the company in a court of law will be forfeited by virtue of the agreement to use and be bound by the FTP.

**The Steps**

You are encouraged to first use the company's informal Open Door Policy to discuss any problems, concerns or disputes you may have with your supervisor. If this informal method does not resolve the issue, then you are encouraged to initiate the more formal Fair Treatment Process described below to resolve the issue. The FTP consists of the following five steps that employees generally must follow to obtain a resolution of a problem, concern or dispute:



During Steps 1 through 4 of the FTP, neither you nor the company may be represented by legal counsel, although both you and the company have the right to consult privately with your own counsel at any time at your own expense.

*Step 1: Supervisor*

If an informal discussion with your Supervisor did not resolve your problem, concern or dispute, you should promptly contact the Human Resources Department to

obtain a *FTP Dispute Resolution Form.* You should complete the form and submit it to your supervisor to initiate the FTP. The supervisor will investigate the problem and will attempt to resolve it. The supervisor will respond to you in writing on the form as soon as possible, usually within seven calendar days from the date you raised the issue. However, in situations where your problem relates to the supervisor, or you do not feel comfortable talking to the supervisor about the problem for any reason, you may consult with a representative of the Human Resources Department for guidance and go directly to *Step 2* in the process.

*Step 2: Department Head*

If you are not satisfied with the supervisor's response to the problem or dispute in *Step 1,* then you may take the problem or dispute to your Department Head. If you wish to pursue this second step in the FTP, you should complete the Section marked "Step 2" on the FTP Dispute Resolution Form and submit the completed form to the Human Resources Department and request that the form be submitted to your Department Head. The Human Resources Department then will submit the FTP Dispute Resolution Form to your Department Head for consideration and response. Your Department Head will discuss the problem with both you and your supervisor and will attempt to resolve it. A written response from your Department Head will be provided to you as soon as possible, usually within seven calendar days of the date the Department Head receives your completed FTP Dispute Resolution Form.

*Step 3: Administration*

If the response from your Department Head in *Step 2* does not resolve your problem or dispute, you may take the problem or dispute to a member of the Facility's Administration office for consideration. If you wish to pursue this third step in the FTP, you should contact the Human Resources Department and request that your FTP Dispute Resolution Form be submitted to Facility Administration for review. The Human Resources Department will submit the FTP Dispute Resolution Form to the appropriate member of Facility Administration for consideration and response. A written response from Administration will be provided to you as soon as possible, usually within seven calendar days of the date you request review under *Step 3.*

*Step 4: FTP Committee*

If the response of Facility Administration in *Step 3* does not resolve your problem or dispute, you may request that the problem or dispute be submitted to the *FTP Committee.* The FTP Committee will be convened and administered by the Human Resources Department, and usually is the final step in the internal dispute resolution process that is utilized only when the problem could not be resolved during Steps 1, 2 or 3. When the matter is submitted to the FTP Committee, the FTP Committee will meet as

2

3

soon as possible, usually within 30 days of your request. The FTP Committee will promptly, objectively and confidentially decide the issue(s) presented to it for consideration. The FTP Committee is discussed in more detail in the "FTP Committee Process" section, below.

Once the problem or dispute has been submitted to the FTP Committee, the Committee will review the facts and make a decision based on the application of company policy and procedure, and may award back pay, where appropriate. It also has the authority to decide whether or not a company policy or procedure has been followed. However, the FTP Committee does not have the authority to discipline employees, modify benefit plans, establish or change company policies or procedures, or award monetary (compensatory or punitive) damages, nor does the decision of the FTP Committee have the effect of setting precedent. The decision of the FTP Committee is subject to review by the Chief Executive Officer of the facility.

The grievances of facility management employees at the Department Head level or above and Corporate management employees are not subject to the FTP Committee process in Step 4. Those grievances are processed according to the steps set forth in the "Exclusions and Restrictions" section, below.

### Step 5: _Final and Binding Arbitration_

If you do not accept the decision reached in _Step 4_, then you have the right to submit the problem or dispute to final and binding arbitration. The arbitration process is limited to disputes, claims or controversies that a court of law would be authorized or have jurisdiction to grant relief and that in any way arise out of, relate to or are associated with your employment with the company or the termination of your employment. In such cases, an impartial and independent arbitrator – chosen by agreement of both you and the company – will be retained to make a final decision on your dispute or claim, based on application of company policies and procedures and applicable law. The arbitrator's decision is final and binding on you and the company. The arbitration process is discussed in more detail in the "Arbitration Process" section below:

### The FTP Committee Process

_Committee Composition:_ The FTP Committee will consist of five facility employees, and will be chaired by a Human Resources Representative appointed by the Divisional Human Resources Department. The Chairperson will convene the FTP Committee meeting and will serve as the facilitator for the meeting. The Chairperson is not a voting member of the FTP Committee.

_Committee Selection:_ Five facility employees will be randomly selected jointly by you and the facility representative, with the assistance of the Human Resources Department, to serve on the FTP Committee. Three of the Committee members must be non-management employees,

and two must be management employees. To ensure objectivity, the FTP Committee members should not be in the same department as the affected employee, should not be familiar with the dispute or have a close relationship with any of the parties or personnel involved in the dispute.

_Committee Proceedings:_ The proceedings of the FTP Committee will be informal and conducted in accordance with the following guidelines:

a)  The Chairperson will convene the meeting, introduce the parties, state the issues to be decided and present any pertinent information, including an explanation of the company policies and procedures involved, if necessary.

b)  Each party will be permitted to present his or her case to the FTP Committee in accordance with such guidelines as to duration and manner of presentation as the Chairperson has established and communicated to the parties before the hearing.

c)  Any party may present evidence in support of its position, including relevant documents and the testimony of witnesses; but a party may not present the testimony of more than three witnesses unless the Committee decides that there is good cause to allow additional witnesses. The Committee will determine what evidence it will consider and the weight such evidence will be given. The Committee may permit a party to submit a written statement at the FTP Committee meeting setting forth his or her position and the evidence supporting it.

d)  At any time during the FTP Committee meeting, after the initial opening statement by both parties, the Committee members may ask questions or request information from the parties or from the witnesses.

e)  Immediately following the FTP Committee meeting, the Committee members will convene in private to discuss the case and vote by secret ballot or by open vote on the issues presented. The Committee decision shall be determined by a majority vote (3 of 5). The Committee's responsibility shall be to carefully evaluate the facts presented and reach a decision based on those facts.

f)  If the FTP Committee decides that it needs additional information during its deliberation in order to reach a decision, it may hear additional testimony and/or consider additional documents.

g)  Once a decision has been reached by the FTP Committee, the FTP Committee meeting will be reconvened and, with the parties present, the Chairperson will announce the decision. Alternatively, the decision of the Committee may be communicated to the affected employee by telephone or mail without reconvening the Committee. The Human Resources Department will ensure that all actions required to implement the decision of the FTP Committee are carried out promptly.

4

5

*Committee Members:* The FTP Committee process is an opportunity to participate in a process intended to ensure that employee issues are resolved in a prompt, fair and equitable manner. Employees who serve as FTP Committee members are required to accept the important responsibilities of Committee membership. The issues presented may have serious and long lasting consequences for all persons involved. All employees selected to serve on a FTP Committee must acknowledge their solemn responsibility to (1) render an objective and unbiased decision that is based only on the facts presented and the application of company policies and procedures, (2) maintain strict confidentiality and not disclose any of the information learned during the process, and (3) participate fully in the FTP Committee process.

## The Arbitration Process

If you want to appeal the decision reached in Step 4 of the process, you must obtain and complete a "Request for Arbitration Form" from the Human Resources Department in order to initiate the arbitration process. That form also will serve to confirm your and the company's prior mutual agreement to submit the dispute to final and binding arbitration. The arbitration will be heard by an independent and impartial arbitrator chosen by you and the company. By deciding to arbitrate the dispute, you also agree that the remedy, if any, ordered by the arbitrator will be the only remedy as to all matters that are or could have been raised by you in the arbitration.

The arbitrator's responsibility is to determine whether company policies and procedures and applicable law have been complied with in the matter submitted for arbitration. In fulfilling this responsibility, the arbitrator may interpret company policies and procedures, but will not have any power to change them. The arbitrator will be requested to render a decision on the matter within 30 days after the arbitration hearing is concluded and post-hearing briefs, if any, are submitted.

The arbitration will be administered by the American Arbitration Association ("AAA"). The company and you will share the cost of the AAA's filing fee and the arbitrator's fees and costs, but your share of such costs shall not exceed an amount equal to one day's pay (for exempt employees) or eight times your hourly rate (for non-exempt employees). You and the company will be responsible for the fees and costs of your own respective legal counsel, if any, and any other expenses and costs, such as costs associated with witnesses or obtaining copies of hearing transcripts.

## Exclusions and Restrictions

Certain issues may not be submitted for review (or exclusive review) under the FTP ("Excluded Issues"). Other issues may be subject to special restrictions ("Restricted Issues").

*Excluded Issues:* Workers' Compensation Claims, any claim involving the construction or application of a benefit plan covered by ERISA, and claims for unemployment benefits are excluded from the FTP. In addition, any non-waivable statutory claims, which may include wage claims within the jurisdiction of a local or state labor commissioner or administrative agency charges before the Equal Employment Opportunity Commission or similar local or state agencies, are not subject to exclusive review under the FTP. This means that you may file such non-waivable statutory claims with the appropriate agency that has jurisdiction over them if you wish, regardless of whether you decide to use the FTP to resolve them. However, if such an agency completes its processing of your action against the company, you must use the FTP if you wish to pursue your claim (although Steps 1 through 4 may be skipped). In addition, the FTP does not apply to employees covered by a collective bargaining agreement, unless otherwise agreed to by such employees. The FTP also does not apply to claims by the company for injunctive relief and/or other equitable relief for unfair competition and/or the use of unauthorized disclosure of trade secrets or confidential information, relief for which may be sought in court.

*Restricted Issues:*

*Sexual Harrassment Complaints:* Due to the sensitive nature of claims of sexual harassment, you are not required to use Step 1 of the FTP to raise sexual harassment claims if you do not wish to do so. Instead, you should follow the steps in the company's policy prohibiting sexual harassment. If you are not satisfied with the company's response to a claim for sexual harassment, then you must use the FTP to resolve the claim or dispute.

*Grievances of Management Employees:* Facility management employees at the Department Head level or above will use the following FTP steps to submit their grievances for review: *Step 1:* Immediate Supervisor; *Step 2:* Chief Executive Officer of the facility; *Step 3:* Regional Vice President; *Step 4:* Request for Arbitration. Facility Chief Executive Officers and management employees in the divisional or corporate offices will use the following FTP steps to submit their grievances for review: *Step 1:* Immediate Supervisor; *Step 2:* The next level in the chain of command; *Step 3:* The next level in the chain of command; *Step 4:* Request for Arbitration.

## Other Important Information

*Applicable Law and Procedural Rules:* The Federal Arbitration Act, 9 U.S.C. § 1, et seq., will govern arbitrations under the FTP. The applicable Employment Dispute Resolution Rules of the AAA will govern the procedures to be used in such arbitrations, unless you and the company agree otherwise.

*Discovery and Amendment of Claims:* If a dispute is submitted to arbitration, either you or the company may make a reasonable request for copies of relevant documents

from each other, and both parties shall provide each other with a list of the witnesses they intend to call to testify at the arbitration at least ten days before the arbitration. No dispositions or other discovery shall be taken unless ordered by the arbitrator. Disputes submitted for resolution under the FTP may be amended as provided by the AAA rules.

*Limitations Periods:* Any request for arbitration under the FTP must be made within one year after the event giving rise to the dispute. If the claim was submitted to a federal, state or local agency, then a request for arbitration of that claim must be made within 90 days of the receipt of the agency's decision. However, if a longer limitations period is provided by a statute governing your claim, then your claim will be subject to the longer limitations period provided by the statute.

*Authority of Arbitrator:* The arbitrator has the authority to award any remedy that would have been available to you had you litigated the dispute in court under applicable law.

*Representation by Counsel:* During Steps 1 through 4 of the FTP, neither you nor the company may be represented by legal counsel, although both you and the company have the right to consult privately with your own counsel at any time at your own expense. Both you and the company may be represented by counsel at arbitration during Step 5 at each parties' own expense. Generally, the company will be represented by legal counsel at arbitration. The company will not provide legal advice to employees, but it strongly encourages employees to consult with independent legal counsel of their own choosing if they have any questions about whether they should be represented by legal counsel at arbitration or any other issue related to the arbitration.

*Confidentiality:* All statements and information made or revealed during the FTP are confidential, and neither you nor the company may reveal any such statements or information, except on a "need to know" basis or as permitted or required by law.

*At-Will Employment:* Nothing in the FTP shall be construed to create a contract of employment, express or implied, nor does the FTP in any way alter the at-will nature of the employment relationship between you and the company.

*Modifications to the FTP:* The company will not modify or change the agreement between you and the company to use final and binding arbitration to resolve employment-related disputes without notifying you and obtaining your consent to such changes. However, the company may change or modify the FTP procedures from time-to-time without advance notice and without the consent of employees.

If you have any questions about the Fair Treatment Process, please contact your supervisor or the Human Resources Department.

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA<br>☒ EEOC | 150A201407 |

| | |
|---|---|
| Florida Comm. on Human Relations<br>*State or local Agency, if any* | and EEOC |

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Mr. Michael Madera | (305) 387-8592 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 15288 S.W. 104th Street, Apt. 315, Miami, FL 33196 | | 06/23/1964 |

**NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME** *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| PALMETTO GENERAL HOSPITAL | Cat A (15-100) | (305) 823-5000 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 2001 W 68 St, Hialeah, FL 33016 | | 025 |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN<br>☐ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ OTHER *(Specify)* | EARLIEST          LATEST<br>01/14/2002    01/14/2002<br>☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I.  I am a qualified individual with a disability.  I applied on January 14, 2002 for the position of Social Worker for the above Respondent.

II.  I have not been called for an interview, eventhough I have met all criteria for the position.  The position has not been filled.  No reason has been given for the above action.

III.  I believe I have been discriminated against in violation of Title I of the Americans with Disabilities Act.

**DEFENDANT'S EXHIBIT**

C

| | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | |
| Date *2-25-02*   *Michael Madera*<br>Charging Party *(Signature)* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Month, day and year) |

EEOC FORM 5 (Rev. 07/99)

**FILE COPY**

U.S. E?    Employment Opportunity Commissio
## DISMISSAL AND NOTICE OF RIGHTS

| To:  Michael Madera | From:  Miami District Office |
|---|---|
| 15288 S.W. 104th Street, Apt. 315 | Equal Employment Opportunity Commission |
| Miami, FL 33196 | One Biscayne Tower, Suite 2700 |
| | 2 South Biscayne Boulevard |
| | Miami, Florida  33131-1805 |

☐ *On behalf of a person aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge Number | EEOC Representative | Telephone No. |
|---|---|---|
| 150A201407 | Consuelo Nodar, Investigator | (305) 530-6054 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[X] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ We cannot investigate your charge because it was not filed within the time limit required by law.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You had 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with th statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### -- NOTICE OF SUIT RIGHTS --
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may pursue this matter further by bringing suit in federal or state court against the respondent(s) named in the charge. **If you decide to sue, you must sue WITHIN 90 DAYS** from your receipt of this Notice. Otherwise your right to sue based on the above-numbered charge will be lost.

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible. (If you file suit, please send a copy of your court complaint to this office.)

On behalf of the Commission,

APR 2 3 2002

*(Date Mailed)*

Federico Costales, District Director

cc:

Manuela Vicente, Human Resources

Palmetto General Hospital

2001 W. 68th Street

Hialeah, FL 33016

**DEFENDANT'S EXHIBIT**
D